UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MILFORD WADE BYRD,

      Petitioner,

vs.                                                                    CASE NO. 8:96-cv-771-T-23TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

# **ORDER**

Milford Byrd's amended petition for the writ of habeas corpus pursuant to

28 U.S.C. § 2254 (Doc. 34) challenges the validity of his state conviction for murder

and his sentence of death.  The amended petition asserts thirty-one claims for relief.[1]

The respondent moves to dismiss for procedural reasons all or portions of Claims I,

III–V, VII, VIII–XI, and XIII–XXI.  (Doc. 35)  Byrd opposes dismissal.  (Doc. 39)

This order dismisses several claims that are not reviewable on the merits because

federal review is procedurally barred.  Another order will address the merits of the

remaining claims after the additional briefing permitted by this order.

---

[1] The claims are numbered I through XX. However, Claim XIX includes ten sub-claims, and the claim immediately following Claim XIX is also identified as "Claim XIX." (p. 121) The last two claims in the amended petition (pp. 121–31) should be numbered as Claims XX and XXI.

# THE FACTS OF THE MURDER[2]

Byrd and his wife, Debra, managed a motel in Tampa. Debra's body was found on the floor of the motel office at approximately 7:00 a.m. on October 13, 1981. An autopsy revealed that Debra had suffered four non-fatal scalp lacerations, four non-fatal gunshot wounds, and scratches and bruises on the neck. The pathologist determined that the cause of death was strangulation and that death had occurred between 9:00 p.m. on October 12 and 3:00 a.m. on October 13.

During interrogation on the morning of October 13, Byrd told police that, on the night of the murder, he had gone to a gym and then to two bars. He stated that he returned home to the motel around 6:45 a.m., found his wife's body and called the police. Later that morning Byrd requested that a desk clerk at the motel contact a life insurance company with reference to an insurance policy on Debra's life. Byrd was the sole beneficiary of the $100,000 policy. Five days later, on October 19,  Byrd personally carried a copy of Debra's death certificate to the insurance company and twice inquired as to how long settlement of the policy claim would take.

Ronald Sullivan, a resident of the motel, was arrested for violation of parole on October 27 and was subsequently charged with Debra's murder. After interviewing Sullivan, the police decided that they had probable cause to arrest Byrd. At 2:30 a.m. on October 28, the police arrived at Byrd's residence at the motel where they awoke Byrd and arrested him for the first-degree murder of his wife. Although the arresting officers had no arrest warrant when they went to Byrd's residence, it is undisputed that they had probable cause to arrest Byrd. One of the arresting officers knocked on Byrd's door, identified himself to Byrd through a window, and mentioned that he had previously spoken to him with regard to the death of Byrd's wife. After a few seconds Byrd opened the door and stepped back. The detective then took a step inside, placed Byrd under arrest for the murder of his wife, and advised him of his rights. In the motel room with Byrd was his girlfriend, who was asked by the officers to accompany them to the police station. The woman voluntarily accompanied the officers.

At the police station Byrd was again advised of his rights. He signed a written waiver of his rights at 2:55 a.m. Byrd neither admitted nor denied involvement in the crime until approximately 4:40 a.m. when he told the police he would tell them the truth if he could speak privately

---

[2] Except that "Byrd" is substituted for "Appellant," this recitation of facts is extracted verbatim from *Byrd v. State*, 481 So.2d 468, 469–71 (Fla. 1985).

with his girlfriend. The detectives allowed Byrd to spend some time alone with his girlfriend and, when questioning resumed, Byrd's girlfriend re-entered the interrogation room and Byrd gave a confession.

Byrd testified at trial that, at the time of his arrest, the arresting detectives said they had an arrest warrant. He stated that he opened the door and backed up as the detective stepped forward and arrested him.

When questioned about the murder, Byrd stated that he had fallen in love with his girlfriend and that his wife had denied his request for a divorce. He confessed that he had offered Sullivan and Endress, Sullivan's roommate at the motel, five thousand dollars apiece to murder his wife. He also stated that the murder was planned to look like a robbery. Byrd denied, however, that he was present when the murder occurred. After this initial confession, Byrd requested permission to use the telephone in the homicide squad room to call his father. Three police officers overheard this conversation and testified that Byrd informed his father that, although he had not committed the murder, he had had it done.

Shortly after the telephone call, Byrd signed a consent-to-search form for the search of a motel storage room. During the search of the room, detectives found a hacksaw, drill, solder, and copper and brass filings. Evidence was submitted at trial which indicated that Sullivan and Endress had fashioned a silencer for the murder weapon in the storage room.

Byrd retracted his initial confession two days after having given it and moved to suppress both the confession and the consent to search. The trial court, finding that the confession was voluntarily given and that the consent was valid, denied the motions.

In exchange for a negotiated plea, Sullivan testified against Byrd on behalf of the state. Sullivan, who was charged with first-degree murder, testified that the state had offered him a term of probation in exchange for his truthful testimony. Sullivan stated that Byrd had approached Endress and himself about having Debra killed. He also testified that he, Endress, and Byrd were present when Debra was murdered; that Endress shot Debra several times and hit her with the gun; and that the three, in turn, had choked her.

The defense produced testimony from three county jail inmates concerning inconsistent statements made by Sullivan while he was in jail. The inmates offered three different statements allegedly given by Sullivan which alternatively placed the blame for Debra's murder on himself, Endress, and unknown armed robbers. A defense motion for a

mistrial, based on the state's method of impeaching one of the inmates, was denied.

Byrd testified on his own behalf and denied complicity in the crime. He stated that he had been at two bars the night of the murder. Byrd also testified that his initial confession was given only because of concern for his girlfriend. Attempts to expedite the insurance policy on Debra's life, he explained, were only to enable him to pay the funeral expenses.

At the conclusion of the guilt phase of the trial, the jury returned a verdict of guilty of first-degree murder.

During the sentencing phase of the trial, the defense presented two witnesses, Byrd and his father. Byrd testified concerning his relationship with his girlfriend subsequent to his wife's death. His father testified as to Byrd's non-violent nature and Byrd's relationship with his wife. The jury returned an advisory recommendation of the death penalty.

After the jury had given its recommendation, the trial judge heard testimony from two experts in the field of psychiatry concerning Byrd's mental state at the time of the crime. The witnesses stated that Byrd was not under the influence of any extreme mental or emotional disturbance, was not acting under the substantial domination of any other person, was not acting under extreme duress, and was not suffering any mental illness.

The trial judge agreed with the jury's recommendation and imposed the death sentence. The judge found three aggravating circumstances and one mitigating circumstance. The judge specifically found that the crime was committed for pecuniary gain in that Byrd murdered his wife so that he could collect the proceeds of the $100,000 life insurance policy; that the murder was especially heinous, atrocious, and cruel; and that the acts of Byrd exhibited the highest degree of calculation and premeditation. As a mitigating circumstance, the judge found that Byrd had no significant history of criminal activity.

## PROCEDURAL HISTORY

Byrd's conviction and death sentence were affirmed on direct appeal. *Byrd*, 481

So. 2d 468. The denial of Byrd's first motion to vacate was affirmed on appeal. *Byrd*

*v. State*, 597 So. 2d 252 (Fla. 1992).  The Florida Supreme Court denied Byrd's state

petition for the writ of habeas corpus.  *Byrd v. Singletary*, 655 So. 2d 67 (Fla. 1995).

Byrd initially petitioned in this court for the writ of habeas corpus in 1992.

Byrd's petition was dismissed without prejudice to permit exhaustion of Byrd's state

remedy.  *See Byrd v. Singletary*, 8:92-cv-1042-T-23 (M.D. Fla. 1992).  Byrd next

petitioned in this court for the writ of habeas corpus in April 1996.  (Doc. 1)  In

September 1996, the petition was abated, the action was stayed, and the case was

closed administratively.  (Doc. 17)

In September 2001, this case was re-opened.  (Doc. 29)  Byrd amended his

petition.  (Doc. 34)  The respondent moved to dismiss.  (Doc. 35)  Byrd responded to

the motion to dismiss.  (Doc. 39)  On July 22, 2002, the case again was closed

administratively and the action stayed pending the outcome of *Bottoson v. Moore*, 824

So. 2d 115 (Fla. 2002), and *King v. Moore*, 824 So. 2d 127 (Fla. 2002).  (Doc. 40)

On July 9, 2009, *Byrd v. State*, 14 So. 3d 921 (Fla. 2009), affirmed the denial of

Byrd's second motion to vacate his sentence, a motion filed in the state post-

conviction court in 2002.

Byrd's motion to re-open this case was granted on October 28, 2009.  (Doc. 43)

Byrd's motion to stay the action was denied on March 19, 2012.  (Doc. 49)

## GOVERNING STANDARDS

The respondent argues that federal review of several grounds for relief is precluded based on (a) failure to exhaust state court remedies or (b) procedural default.

## A. Exhaustion

A petitioner must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *quoting Picard v. Connor*, 404 U.S. 270, 275 (1971). *Accord Rose v. Lundy*, 455 U.S. 509, 518-19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). Also, a petitioner must present to the federal court the same claim presented to the state court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").

A petitioner must alert the state court that he is raising a federal claim and not just a state law claim.

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 32 (2004). As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *See also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted).

## B. Procedural Default

Before a claim is procedurally barred from federal review, a state court must reject reviewing the claim based on the procedural deficiency.

> Thus, the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent this Court from reaching the federal claim: "The state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."

*Harris v. Reed*, 489 U.S. 255, 262 (1989), *quoting Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). Also, the court must explicitly state that the decision "rests upon" the enforcement of a procedural rule. "[I]f 'it fairly appears that the state court rested its decision primarily on federal law,' this Court may reach the federal question on review unless the state court's opinion contains a 'plain statement' that its decision rests upon adequate and independent state grounds." *Harris v. Reed*, 489 U.S. at 261, *quoting Michigan v. Long*, 463 U.S. 1032, 1042 (1983). Consequently, citing to the

state procedural rule and stating that the claim "could have been raised on direct appeal" or in some prior proceeding is insufficient. *Harris v. Reed*, 489 U.S. at 266. *See also Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("[W]here a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim."), *cert. denied*, 513 U.S. 1061 (1994). Consequently, the initial question is whether the state court issued a "plain statement" applying the independent and adequate state procedural bar.

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."); *Kennedy v. Herring*, 54 F.3d 678, 684 (1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), *appeal after remand*, *Kennedy v. Hopper*, 156 F.3d 1143 (11th Cir.), *cert. denied sub nom Kennedy v. Haley*, 526 U.S. 1075 (1999).

As a general proposition, a federal court is precluded from addressing the merits of a procedurally defaulted ground unless the petitioner can show "cause and prejudice"or "manifest injustice." *Coleman v. Thompson*, 501 U.S. 72, 29--30 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986).  "Cause" must ordinarily be something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).  To show "prejudice," the petitioner must show "not merely that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original).

To meet the fundamental miscarriage of justice exception, the petitioner must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause).

Further, the petitioner must show, to the extent the claim presents an independent constitutional claim, that he has exhausted the claim that he raises to excuse his procedural default.  *See Murray v. Carrier*, 477 U.S. at 488-89 (if ineffective assistance of counsel is alleged as cause to excuse a procedural default, the petitioner

must have presented the ineffectiveness claim to the state courts as an independent

claim); *Hill v. Jones*, 81 F.3d 1015, 1830 (11th Cir. 1996) ("[P]rocedurally defaulted

claims of ineffective assistance *cannot* serve as cause to excuse a default of a[nother]

claim.") (emphasis in original), *cert. denied*, 519 U.S. 1119 (1997).

## GROUNDS

**Claim I**

Byrd contends that he was denied a fair trial because the prosecutor (1) failed

to correct Sullivan's testimony, which did not disclose all the consideration he was

promised by the State in exchange for his testimony at Byrd's trial; (2) argued falsely

during his summation that the case against Sullivan was weak and that Sullivan

would certainly violate probation and receive a sentence of life imprisonment; and

(3) improperly vouched for the credibility of the police, a State's witness (Mr. Shad),

and himself.  Further, Byrd contends that "[t]o the extent that [trial counsel] was

aware of the deception," he was ineffective in failing to object to and "refute the

prosecutor's presentation of misleading and/or inaccurate testimony and argument."

(Doc. 34 at p. 23)

The respondent argues that Byrd's claims that the prosecutor improperly

vouched for the credibility of the police, a State's witness, and himself and spoke

falsely during the summation are procedurally barred from review because

(1) defense counsel did not object contemporaneously during trial, (2) the issues were

not raised on direct appeal, and (3) the state post-conviction court found these claims

procedurally defaulted because they were not raised on direct appeal.  Byrd disputes

that the claims are procedurally defaulted.

On direct appeal, Byrd raised his claim that the State failed to correct Sullivan's

incomplete testimony about the compensation he received from the State.  (Resp.

Ex. B at pp. 29–32)  He did not, however, raise his claims that the prosecutor

improperly vouched for the police, Mr. Shad, and himself and offered false

statements during summation.  (Resp. Ex. B at pp. 1–50)  Rather, Byrd raised his

improper vouching claim in Claim III of his Rule 3.850 motion (Resp. Ex. M, Vol. 6

at record pp. 753–55) and raised the false statements and ineffective assistance of

counsel claims in Claim III of his supplement to his Rule 3.850 motion.  (Resp.

Ex. M, Vol. 6 at record pp. 827–32)  The state post-conviction court ruled that "the

allegations relating to improper prosecutorial argument" were procedurally barred

because they were not raised on direct appeal,[3] and to the extent Byrd was asserting

ineffective assistance of trial counsel, the claim was "unavailing."  (Resp. Ex. M,

Vol. 3 at record pp. 409–10)  On appeal, Byrd raised his substantive claims of

improper vouching and false statements, and asserted, in pertinent part, that the

"claim is ultimately premised upon ineffective assistance of counsel."  (Resp. Ex. N

at pp. 52–58)

Although Byrd raised these claims in his Initial Brief, the Florida Supreme

Court apparently did not address them in its written opinion.  *See Byrd*, 597

---

[3] The state post-conviction court apparently addressed Byrd's improper vouching claim and false statements claim as one claim of "improper prosecutorial argument."

So. 2d 252.  Consequently, an examination of the decision by the state post-conviction court is necessary to discern whether the denial of these claims rests on federal grounds or state procedural grounds.  *See Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1316-17 (11th Cir. 2006) ("The Supreme Court has provided clear guidance on how to construe a summary or unexplained state court decision.  In *Ylst v. Nunnemaker*, the Court held that when a state appellate court affirms a lower court's ruling without articulating its reasons for doing so, we should apply 'the following presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'  501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 . . . ."), *cert. denied*, 550 U.S. 922 (2007).

Because the state post-conviction court clearly and expressly relied on a procedural bar and did not address the merit of Byrd's underlying substantive claims of improper prosecutorial statements and vouching, the claims are barred from federal review.  However, the ineffective assistance of trial counsel claim and substantive claim that the State failed to correct Sullivan's false testimony are entitled to a review on the merits.

**Claims III and IV**

In Claim III, Byrd contends that he was denied a fair trial because either the State withheld exculpatory evidence or defense counsel failed to discover and use the exculpatory evidence.  In Claim IV, Byrd asserts several instances of ineffective

assistance of trial counsel during the guilt and innocence phases of the trial. Although conceding that Byrd raised these claims in his Rule 3.850 motion, the respondent argues that portions of the claims are procedurally barred because Byrd failed to present evidence in support of those portions during the evidentiary hearing on his Rule 3.850 motion, and the state post-conviction court therefore deemed those portions "abandoned."

In state court, Byrd raised these claims in Claims IX and X of his supplement to his Rule 3.850 motion.  (Ex. M, Vol. 6 at record pp. 853–65)  Each claim contained sub-claims.  The state post-conviction court denied several of the sub-claims on the merits (Ex. M, Vol. 3 at record pp. 347–51) and deemed several other sub-claims "abandoned" because Byrd failed to present evidence supporting those claims during the evidentiary hearing on his Rule 3.850 motion.  (Ex. M, Vol. 3 at record p. 353)  On appeal, the Florida Supreme Court affirmed the denial of these claims, found "no violation of *Brady v. Maryland*, 373 U.S. 83 (1963)," and found that "[t]he trial judge specifically addressed each of" Byrd's ineffective assistance of counsel claims and "properly applied the principles of *Strickland v. Washington*, 466 U.S. 668 (1984)" in denying relief.  *Byrd*, 597 So. 2d at 256."

The Florida Supreme Court, the last state court rendering a judgment on these claims, did not clearly and expressly rely on a state procedural rule in resolving these claims.  Therefore, the Florida Supreme Court's denial of these claims does not rest on an independent and adequate state ground.  *See Mason v. Allen*, 605 F.3d 1114,

1119-20 (11th Cir. 2010) ("To determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision, this court has set forth the following three-part test: (1) the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural rules to resolve the federal claim without reaching the merits of that claim. . . .") (citation and internal quotation marks omitted). Therefore, Grounds III and IV are not procedurally barred from federal habeas review.

**Claim V**

As written, Claim V alleges that both trial and appellate counsel were ineffective in failing to "adequately litigate the exclusion of critical evidence." In support of the claim, Byrd asserts that trial counsel failed to preserve for appeal the trial court's erroneous exclusion of (1) a transcript of Sullivan's October 28, 1981, recorded statement; (2) testimony regarding two suspects in the killing of Debra Byrd until Sullivan gave his statement on October 28, 1981; (3) letters Byrd wrote to Jody Clymer in which he maintained that he was not involved in the homicide; and (4) testimony from Lorrie Price that she bought from Debra Byrd marijuana that Debra Byrd allegedly bought from Sullivan. Byrd asserts that the exclusion of this evidence denied him the right to present a defense. Therefore, the claim alleges in substance that trial counsel was ineffective in failing to preserve Byrd's "denial of the right to present a defense" claim for appeal.[4]

---

[4] In Claim XIX, Sub-claim E, Byrd alleges that appellate counsel was ineffective in failing to raise the "denial of the right to present a defense" claim on appeal. ( Doc. 34 at pp. 109–11)

Byrd did not raise this ineffective assistance of counsel claim in his state Rule 3.850 motion.  Rather, in Claim VII of the Rule 3.850 motion he raised a substantive claim that the trial court's exclusion of certain evidence deprived him of the opportunity to present a defense.  (Resp. Ex. M, Vol. 6 at record pp. 764–66) Therefore, Claim V is unexhausted and now procedurally barred from federal review.[5]

**Claim VII**

Byrd contends that his rights under the Sixth, Eighth, and Fourteenth Amendments were violated when the trial court failed to ensure that he was present during critical stages of the proceedings, specifically, an in-camera hearing, the jury instruction conference, and unspecified side bar conferences.  Byrd further contends that trial counsel was ineffective "for unreasonably failing to ensure Mr. Byrd's presence for all critical proceedings." (Doc. 34 at p. 57)

Byrd raised his substantive claim in his state Rule 3.850 motion.  (Resp. Ex. M, Vol. 6 at record pp. 752–53)  The state post-conviction court ruled that the substantive claim was procedurally barred because the claim was not raised on direct appeal, and to the extent Byrd was asserting ineffective assistance of trial counsel, the claim failed on the merits for failure to establish prejudice.  (Resp. Ex. M, Vol. 3 at record pp. 408–09)  On appeal, Byrd did not raise his substantive claim.  (Resp. Ex. N)  Rather, Byrd raised only that trial counsel was ineffective in failing to ensure

---

[5] Byrd fails to allege or demonstrate cause and prejudice excusing his default.

Byrd was present during each critical stage of the proceedings. (Resp. Ex. N at

pp. 70–75)  The Florida Supreme Court ruled that the ineffective assistance claim

was meritless:

> Finally, Byrd made numerous claims in this rule 3.850 proceeding that
> he was deprived of the effective assistance of counsel in both the guilt
> and penalty phases of his trial, in violation of his Sixth, Eighth, and
> Fourteenth Amendment rights. The trial judge specifically addressed
> each of these claims and denied relief. We find that the trial judge
> properly applied the principles of *Strickland v. Washington*, 466 U.S. 668,
> 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and this record clearly
> supports his holding.

*Byrd v. State*, 597 So. 2d at 256.  Consequently, the underlying substantive claim is

unexhausted because Byrd failed to raise it on appeal from the denial of his

Rule 3.850 motion.  *See Pruitt v. Jones*, 348 F.3d 1355, 1358–59 (11th Cir. 2003) (to

exhaust a claim, a state prisoner "must give the state courts one full opportunity to

resolve any constitutional issues by invoking one complete round of the State's

established appellate review process, including review by the state's court of last

resort, even if review in that court is discretionary.") (citation and internal quotation

marks omitted).  Moreover, the underlying substantive claim is barred from review

because the state post-conviction court's opinion contains the requisite "plain

statement" applying the state's procedural bar rule.  However, the ineffective

assistance of trial counsel claim is entitled to review on the merits.

**Claim VIII**

Byrd contends that he was denied his right to confront the witnesses against

him when the state court restricted his right to cross-examine key state witnesses on

matters that would have undermined their credibility.  He further contends that trial counsel was ineffective in failing to argue that the restrictions on cross-examination violated Byrd's confrontation rights under the Sixth Amendment.

Byrd raised his substantive claim in his state Rule 3.850 motion.  (Resp. Ex. M, Vol. 6 at record pp. 766–67)  The state post-conviction court ruled (1) that the substantive claim was procedurally barred because the claim was not raised on direct appeal and (2) that Byrd was precluded from re-litigating the issue on the basis of ineffective assistance of trial counsel.  (Resp. Ex. M, Vol. 3 at record p. 411)  On appeal, Byrd raised his substantive claim, and argued, in pertinent part, that the "claim is ultimately premised upon ineffective assistance of counsel."  (Resp. Ex. N at pp. 78-82)  The Florida Supreme Court ruled that the substantive claim was procedurally barred and that the ineffective assistance claim was meritless.  *See Byrd*, 597 So. 2d at 254, 256.  Consequently, the underlying substantive claim is barred from review because the court's opinion contains the requisite "plain statement" applying the state's procedural bar rule.  However, the ineffective assistance of trial counsel claim is entitled to a review on the merits.

**Claim IX**

Byrd contends that he was convicted on the basis of (1) evidence obtained in violation of his right to remain silent and (2) evidence of a coerced confession.  Further, Byrd implicitly contends that appellate counsel was ineffective for failing on direct appeal to adequately challenge his confession.  (Doc. 34 at p. 64)

On direct appeal, Byrd argued that his confession — coerced rather than voluntary — was erroneously admitted into evidence and resulted from an unlawful, warrantless arrest.  (Resp. Ex. B at pp. 13–20)  Consequently, Byrd's substantive claim that his confession was coerced is entitled to a review on the merits.

In his state Rule 3.850 motion (Resp. Ex. M, Vol. 6 at record pp. 757–59), Byrd initially raised his substantive claim that his confession was obtained in violation of his right to remain silent.  On appeal from the denial of the Rule 3.850 motion, the Florida Supreme Court ruled that the substantive claim was procedurally barred.  *See Byrd v. State*, 597 So. 2d at 254.  When Byrd raised the substantive "right to remain silent violation" claim in his state petition for a writ of habeas corpus, the Florida Supreme Court again ruled that the substantive claim was procedurally barred because the claim was not raised on direct appeal.  *See Byrd v. State*, 655 So. 2d 67, 68 (Fla. 1995).  Consequently, the underlying substantive "right to remain silent violation" claim is barred from review because the Florida Supreme Court's opinion contains the requisite "plain statement" applying the state's procedural bar rule.  However, Byrd's claim that appellate counsel was ineffective in failing to raise this claim on direct appeal is entitled to a review on the merits because Byrd properly raised the claim in his state petition for a writ of habeas corpus.  (Resp. Ex. R)

**Claim X**

Byrd contends that he was convicted based on statements obtained from him by police on October 30, 1981, in violation of his Sixth and Fourteenth Amendment

rights.  Byrd argues that because he invoked his right to counsel at his First Appearance on October 28, 1981, police violated his constitutional rights by initiating his interrogation on October 30, 1981.  Also, Byrd argues that any purported waiver at that time of his right to counsel was invalid.  Further, he contends that appellate counsel was ineffective in failing to raise this issue on direct appeal.

Byrd raised his substantive claim in his state Rule 3.850 motion.  (Resp. Ex. M, Vol. 6 at record pp. 759–64)  The state post-conviction court ruled that the substantive claim was procedurally barred because the claim was not raised on direct appeal.  (Resp. Ex. M, Vol. 3, record p. 410)  On appeal, Byrd raised his substantive claim.  (Resp. Ex. N at pp. 62–66)  The Florida Supreme Court ruled that the substantive claim was procedurally barred because the claim was not raised on direct appeal.  *See Byrd*, 597 So. 2d at 254.  Consequently, the underlying substantive claim is barred from review because the Florida Supreme Court's opinion contains the requisite "plain statement" applying the state's procedural bar rule.

To the extent Byrd contends that appellate counsel was ineffective in failing to raise this claim on direct appeal, Byrd properly raised the claim in his state petition for a writ of habeas corpus.  (Resp. Ex. R at pp. 61–68)  Nevertheless, the respondent correctly argues that this claim is vague and conclusory because Byrd does not identify his October 30, 1981, statement that allegedly incriminated him.[6]

---

[6] Beyond that, Byrd has failed to allege any facts showing prejudice to him from his October 30, 1981, statement. On review of this ineffective assistance of appellate counsel claim, the

(continued...)

**Claim XI**

Byrd contends that his statements while in custody were the result of an unlawful arrest. He further contends that trial counsel was ineffective in failing to adequately litigate this issue when moving to suppress the statements.

Byrd raised his substantive claim on direct appeal. (Resp. Ex. B at pp. 16–20) The Florida Supreme Court found that Byrd's arrest was lawful, and that, even if the arrest was unlawful, "the confession was not so tainted as to be inadmissible." *Byrd*, 481 So. 2d at 471–73. In his state Rule 3.850 motion and supplemental Rule 3.850 motion (Resp. Ex. M, Vol. 6, record pp. 755–57; 833–36), Byrd re-alleged the substantive claim and alleged for the first time an ineffective assistance of trial counsel claim based on this issue. The state post-conviction court (1) ruled that the substantive claim was procedurally barred because the claim was fully and fairly litigated on direct appeal and could not be re-litigated under the guise of an ineffective assistance claim and (2) denied summarily the ineffective assistance claim based on "the record of the pre-trial and trial proceedings. . . ." (Resp. Ex. M, Vol. 3 at record p. 410) On appeal, Byrd raised both his substantive claim and an ineffective assistance of trial counsel claim with regard to this issue. (Resp. Ex. N at pp. 62–66) The Florida Supreme Court ruled (1) that the substantive claim was procedurally

---

[6](...continued)
Florida Supreme Court decided that the claim was "meritless" because nothing Byrd said on October 30, 1981, contributed to his conviction; "he simply denied any involvement in the crime. . . ." *Byrd*, 655 So. 2d at 69.

barred because the claim either was or could have been raised on direct appeal and (2) that the ineffective assistance claim was meritless. *Byrd*, 597 So. 2d at 254, 256.

The respondent contends that under *Stone v. Powell*, 428 U.S. 465 (1976), Byrd cannot pursue his substantive claim in federal court because he had an opportunity for a full and fair review of the claim during the state court proceedings. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494. For the preclusion under *Stone* to apply a state court must issue findings of fact, as *Hearn v. Florida*, 326 Fed. App'x 519, 522 (11th Cir. 2009), explains:

> A state does not afford a defendant a full and fair opportunity to litigate the validity of a search under the Fourth Amendment when the state courts fail to make essential findings of fact. In *Tukes v. Dugger*, we addressed whether *Stone* foreclosed review of the validity of a search when the defendant presented his argument but the state courts failed to make findings of fact to resolve that argument. 911 F.2d 508, 513-14 (11th Cir. 1990). We concluded that the state courts had failed to afford the defendant a full and fair opportunity to litigate the validity of the search when they did not make findings of fact about whether the defendant had invoked his right to counsel or was in custody when he consented to the search of his home. We stated, "The trial court's failure to make explicit findings on matters essential to the fourth amendment issue, combined with the fact that the state appellate court issued only a summary affirmance, precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect a *Stone v. Powell* bar to our review of the claim." *Id.* at 514.

Byrd contends that consideration of this claim is not barred by *Stone* because the state trial court found no facts. (Doc. 39 at p. 17) Although the trial court found

no facts in denying Byrd's motion to suppress (*see* Resp. Ex. A, Vol. 11 at record p. 1758),[7] the Florida Supreme Court found facts and wrote an opinion resolving the Fourth Amendment claim. *See Byrd*, 481 So. 2d at 471–73. Therefore, Byrd's Fourth Amendment claim was fully and fairly considered by, at least, the Florida Supreme Court on appellate review. Consequently, the substantive Fourth Amendment claim is barred from federal review. *See, e.g., Rainey v. Thigpen*, 1993 U.S. Dist. LEXIS 17325, at *7 (N.D. Ala. Apr. 6, 1993) ("[E]ven in the absence of explicit findings of fact by the trial court, an appellate opinion expressly dealing with the Fourth Amendment claim constitutes a full and fair consideration of the claim for *Stone v. Powell* purposes."). *See also, Tukes v. Dugger*, 911 F.2d 508, 514 (11th Cir. 1990) ("The trial court's failure to make explicit findings on matters essential to the fourth amendment issue, *combined with the fact that the state appellate court issued only a summary affirmance*, precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect a *Stone v. Powell* bar to our review of the claim.") (emphasis added) (citations omitted).

With regard to Byrd's claim that counsel was ineffective in failing to adequately litigate Byrd's Fourth Amendment claim, the respondent contends that, although Byrd raised a "general" ineffective assistance of trial counsel claim in state court, he did not present to the state courts his claim that trial counsel was ineffective for

---

[7] The state trial court held an evidentiary hearing on the pre-trial motion to suppress at which Byrd was represented by counsel and given an opportunity to call witnesses. (Resp. Ex. A, Vol. 9 at record pp. 1411–67)

failing to interview and call to testify Clymer and the two police officers who were present at the time of Byrd's arrest.  The respondent argues correctly that this portion of his ineffective assistance of counsel claim is procedurally barred because the claim was not exhausted in state court.

In his Initial Brief on appeal from the denial of his Rule 3.850 motion, Byrd presented as a ground for relief that defense counsel was ineffective in failing to present the testimony of the assistant state attorney who was present during Byrd's arrest.  (Resp. Ex. N at p. 69)  Byrd did not, however, fairly present his claim that counsel was ineffective in failing to call Clymer and the officers to testify.  (Resp. Ex. N at pp. 67–70)  Therefore, the portions (failure to call Clymer and the officers to testify) of this ineffective assistance claim that Byrd failed to present on appeal in his Rule 3.850 proceeding are unexhausted and procedurally barred from review in this federal habeas proceeding.  *See, e.g., McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("[T]o ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").

**Claim XIII**

Byrd contends that his sentence of death violates his rights under the Eighth and Fourteenth Amendments because the sentence resulted from deliberations that included "unconstitutionally invalid" jury instructions on aggravating circumstances and "evidence and argument in support of nonstatutory aggravating circumstances."

Specifically, Byrd argues that the "heinous, atrocious, or cruel" instruction, the "cold, calculated and premeditated" instruction, and the "pecuniary gain" instruction were unconstitutionally vague. Byrd further argues that the jury and sentencing court improperly considered non-statutory aggravating circumstances, specifically, that Byrd showed no remorse and that Sullivan, although receiving probation, would likely violate probation and serve twenty-five years in prison. Finally, Byrd contends that trial counsel was ineffective in failing to object to the "introduction and consideration" of non-statutory aggravating circumstances.

On direct appeal in state court, Byrd failed to raise his challenge to the jury instructions on aggravating circumstances. (Resp. Ex. B) He did, however, raise the claim on appeal from the denial of his Rule 3.850 motion. (Resp. Ex. N at pp. 86–89) Nevertheless, the Florida Supreme Court ruled that the claim was procedurally barred because the claim was not raised in the direct appeal. *See Byrd*, 597 So. 2d at 254. Accordingly, this claim is procedurally barred from federal review.[8]

---

[8] Byrd argues that the claim is not procedurally barred because "the Florida Supreme Court *sua sponte* addressed whether the penalty phase instructions were proper" when the Florida Supreme Court stated that "the trial judge properly instructed the jury under the Florida Standard Jury Instructions." (Doc. 39 at p. 19) Byrd's argument is without merit. The quoted statement responded to Byrd's contention that he was entitled to a new penalty phase because the trial judge failed to instruct the jury on all statutory aggravating circumstances and only gave those instructions supported by the evidence. *Byrd*, 481 So. 2d at 473–74. Byrd's contention did not alert the Florida Supreme Court that Byrd was also challenging the jury instructions on aggravating circumstances as unconstitutionally vague and inadequate. Therefore, the Florida Supreme Court did not resolve on the merits Byrd's claim that the jury instructions on aggravating circumstances were unconstitutional.

However, Byrd's claim that the jury and the sentencing judge improperly considered non-statutory aggravating circumstances is not procedurally barred because he raised the claim in state court (Resp. Ex. B at pp. 46–47; Ex. N at pp. 90-91), and there is no indication that the Florida Supreme Court's denial of the claim rests upon an independent and adequate state ground.  Additionally, the ineffective assistance of trial counsel claim is entitled to a review on the merits because the Florida Supreme Court ruled that, to the extent the substantive claim suggested ineffective assistance of counsel,[9] the claim was "denied on the merits." *Byrd*, 597 So. 2d at 254.

## Claim XIV

Byrd contends that his rights under the Eighth and Fourteenth Amendments were violated when the state trial court failed to consider and find non-statutory mitigating circumstances that were supported by the record.  Specifically, Byrd contends that the state trial court failed to consider and find that he had a non-violent nature, that he loved and provided for his wife, that he was gainfully employed, that he had denied being involved in the homicide, that police told his father that he was not "personally involved" in the homicide, that his father believed he had probably acted under the influence and pressure of his girlfriend, and that there was disparate treatment accorded to co-defendant Sullivan, who received probation.  The

---

[9] In his Initial Brief on appeal from the denial of his Rule 3.850 motion, Byrd raised his substantive claim that the jury and sentencing court improperly considered non-statutory aggravating factors. (Resp. Ex. N at pp. 90–91)

respondent argues that Byrd's assertion that the state trial court failed to consider

Sullivan's disproportionate sentence as mitigation is procedurally barred because

Byrd failed to raise this specific claim on direct appeal[10] and because the Florida

Supreme Court found the claim procedurally barred from post-conviction review

because the claim could have been raised on direct appeal.

In his Initial Brief on direct appeal, Byrd asserted that the state trial court

failed to consider as non-statutory mitigating circumstances both his non-violent

nature and his record of gainful employment.  (Resp. Ex. B at pp. 47–49)  In his

Initial Brief on appeal from the denial of his Rule 3.850 motion, Byrd raised his

claim that the state trial court failed to consider "proportionality as a non-statutory

mitigating factor. . . ."  (Resp. Ex. N at pp. 93–94)  The Florida Supreme Court ruled

that the substantive claim was procedurally barred because the claim was not raised

in the direct appeal.  *See Byrd*, 597 So. 2d at 254.  Consequently, to the extent Claim

XIV contends that the state trial court violated Byrd's rights under the Eighth and

Fourteenth Amendments by failing to consider the lack of proportionality and

disparate treatment accorded to Sullivan as a non-statutory mitigating factor, the

claim is procedurally barred from review.[11]

---

[10] The respondent apparently concedes that the remainder of Byrd's claim is not procedurally barred.

[11] With respect to this ground and Grounds XV, XVI, XVII, and XVIII, Byrd contends that "any procedural bar relied upon by the state courts has been rendered inadequate to foreclose federal review by the Florida Supreme Court's recent decisions in *King v. State*, 808 So. 2d 1237 (Fla. 2002), and *Bottoson v. State*, 813 So. 2d 31 (Fla. 2002)." (Doc. 39 at p. 20) He further contends that "[i]n these cases, the application of *Apprendi* to Florida was entertained on the merits without invocation
(continued...)

**Claim XV**

Byrd contends that his rights under the Eighth and Fourteenth Amendments were violated by jury instructions and prosecutor argument that diminished the jury's sense of responsibility for sentencing. He further contends that trial counsel was ineffective in failing to object to the instructions and argument.

Byrd raised his substantive claim in his state Rule 3.850 motion. (Resp. Ex. M, Vol. 6, record pp. 782–87) The state post-conviction court ruled that the substantive claim was procedurally barred because the claim was not raised on direct appeal. (Resp. Ex. M, Vol. 3, record p. 413)  On appeal, Byrd raised his substantive claim. (Resp. Ex. N at pp. 84–86)  The Florida Supreme Court ruled that the substantive claim was procedurally barred but that, to the extent the claim suggested ineffective

---

[11](...continued)
of any procedural default or procedural bar. Given the Florida Supreme Court's action, there is no adequate procedural bar precluding consideration of the merits of Mr. Byrd's claims which are directly impacted by *Apprendi*." (Doc. 39 at pp. 20–21) Byrd appears to assert that the procedural bar applied by the Supreme Court of Florida, the procedural bar of a Rule 3.850 claim that should have been, but was not, raised on direct appeal, was "inadequate" because the procedural bar has not been consistently and regularly applied by the Florida Supreme Court with respect to *Apprendi* claims. Byrd's argument is unpersuasive. First, he failed to raise *Apprendi* in state court — nor could he have raised *Apprendi* — because *Apprendi* was decided on June 26, 2000 (*see Apprendi v. New Jersey*, 530 U.S. 466 (2000), after the Florida Supreme Court's decision in his case was issued on February 20, 1992. *See Byrd*, 597 So. 2d at 252. Second, Byrd has failed to demonstrate that the procedural bar applied by the Supreme Court of Florida in his case was not firmly established and regularly applied *at the time the default occurred. See Edwards v. Carpenter*, 529 U.S. 446, 450 (2000) ("state procedural default is not an 'independent and adequate state ground' barring subsequent federal review unless the state rule was 'firmly established and regularly followed' at the time it was applied") (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *Albrecht v. Horn*, 485 F.3d 103, 115 (3d Cir. 2007) (whether a state procedural rule is "firmly established and regularly followed" is determined as of the date the default occurred). The state rule that claims which could have been raised on direct appeal are procedurally barred in a motion for post-conviction relief was firmly established and regularly followed by Florida courts at the time the rule was applied to Byrd. *See Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir.) (under Florida law, an issue which could have been raised on direct appeal may not be reviewed in a Rule 3.850 motion), *cert. denied*, 498 U.S. 832 (1990).

assistance of counsel, the claim was meritless. *See Byrd*, 597 So. 2d at 254. Consequently, the underlying substantive claim is barred from review because the Florida Supreme Court's opinion contains the requisite "plain statement" applying the state's procedural bar rule. However, the ineffective assistance of trial counsel claim is entitled to a review on the merits.

**Claim XVI**

Byrd contends that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated by penalty phase jury instructions that shifted the burden to Byrd to prove that death was not appropriate. He further contends that trial counsel was ineffective in failing to object to the instructions.

Byrd raised the substantive claim in his state Rule 3.850 motion. (Resp. Ex. M, Vol. 6, record pp. 787–90) The state post-conviction court ruled that the substantive claim was procedurally barred because the claim was not raised on direct appeal. (Resp. Ex. M, Vol. 3, record p. 413) On appeal, Byrd raised his substantive claim. (Resp. Ex. N at pp. 82–84) The Florida Supreme Court ruled that the substantive claim was procedurally barred and that, to the extent the claim suggested ineffective assistance of counsel, the claim was meritless. *See Byrd*, 597 So. 2d at 254. Consequently, the underlying substantive claim is barred from review because the Florida Supreme Court's opinion contains the requisite "plain statement" applying the state's procedural bar rule. However, the ineffective assistance of trial counsel claim is entitled to a review on the merits.

**Claim XVII**

Byrd contends that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated by a penalty phase jury instruction that misled the jury into believing that a majority vote was required to recommend a life sentence.

Byrd raised this claim in his state Rule 3.850 motion.  (Resp. Ex. M, Vol. 6, record pp. 794–97)  The state post-conviction court ruled (1) that the claim was procedurally barred because the claim was not raised on direct appeal and (2) that the claim failed on the merits because the instruction was proper.  (Resp. Ex. M, Vol. 3, record p. 414)  On appeal, Byrd raised this claim in his Initial Brief.  (Resp. Ex. N at pp. 89–91)  The Florida Supreme Court ruled (1) that the claim was procedurally barred because the claim was not raised on direct appeal and (2) that the claim failed on the merits because the instruction was not erroneous.  *See Byrd*, 597 So. 2d at 256.  Consequently, the claim is barred from review because the Florida Supreme Court's opinion contains the requisite "plain statement" applying the state's procedural bar rule.  *See Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim."), *cert. denied*, 513 U.S. 1061 (1994).

Byrd asserts that trial counsel's failure to object to the erroneous jury instruction was the cause of the procedural default, presumably based upon counsel's failure to preserve the issue for appeal.  (Doc. 34 at p. 101)  Ineffective assistance of

counsel may serve as cause to excuse procedural default. *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).  However, the petitioner must exhaust the claim of ineffective assistance as an independent claim in state court as a prerequisite to the claim's availability in federal court to establish cause for procedural default. *Murray v. Carrier*, 477 U.S. at 489; *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989). Byrd did not present a claim of ineffective assistance of trial counsel to the state courts with respect to this claim.  Therefore, his assertion of ineffective assistance of counsel cannot serve as cause for the procedural default of this claim.

**Claim XVIII**

Byrd contends that his rights under the Eighth and Fourteenth Amendments were violated when the jury was "incorrectly instructed on an irrelevant aggravating circumstance."  Specifically, Byrd states that his rights were violated because the written jury instructions, which were sent into the jury deliberation room, included an aggravating circumstance not included in the oral instructions to the jury, specifically, that the crime was committed to disrupt or hinder the lawful exercise of a governmental function, including enforcement of the law.

Byrd raised this claim in his state Rule 3.850 motion.  (Resp. Ex. M, Vol. 6, record pp. 797–99)  The state post-conviction court ruled that the claim was procedurally barred because the claim was not raised on direct appeal.  (Resp. Ex. M, Vol. 3, record p. 414)  On appeal, Byrd raised this claim in his Initial Brief.  (Resp. Ex. N at pp. 86-89)  The Florida Supreme Court ruled that the claim was

procedurally barred and that the claim was meritless to the extent the claim suggested ineffective assistance of counsel.  *See Byrd*, 597 So. 2d at 254.

Presumably based upon counsel's failure to preserve the issue for appeal, Byrd asserts that trial counsel's failure to object to the inclusion of the erroneous written jury instruction was the cause of the procedural default.  (Doc. 34 at p. 103) However, with respect to this claim, Byrd did not present a claim of ineffective assistance of trial counsel to the state courts.  Therefore, Byrd's assertion of ineffective assistance of counsel cannot serve as cause for the procedural default of this claim.  *See Murray v. Carrier*, 477 U.S. at 489.  Consequently, the claim is barred from review because the Florida Supreme Court's opinion contains the requisite "plain statement" applying the state's procedural bar rule.

**Claim XIX**

In Claim XIX, Byrd asserts ten claims of ineffective assistance of appellate counsel.  The respondent contends that each claim is procedurally defaulted because the Florida Supreme Court found each claim was procedurally barred from review.

Byrd raised his ineffective assistance of appellate counsel claims in a petition for the writ of habeas corpus (*see* Resp. Ex. R at pp. 20–90), the procedurally correct mechanism to present the Florida state courts with those claims.  *See Blake v. State*, 2014 Fla. LEXIS 3544, at * 80 (Fla. Dec. 4, 2014) ("Blake's claims alleging ineffective assistance of appellate counsel are appropriately raised in a petition for a writ of habeas corpus.").  After finding that trial counsel failed to preserve for

appellate review the issues Byrd contended that appellate counsel was ineffective in failing to raise, the Florida Supreme Court ruled that appellate counsel "could not be deemed deficient for failing to raise these issues on appeal" because the issues were not preserved for appeal. *Byrd*, 655 So.2d at 68–69. Alternatively, the Florida Supreme Court ruled that "appellate counsel was not ineffective in failing to raise [the issues] on appeal because we find each of the claims to be without merit." 655 So.2d at 69.

The Florida Supreme Court did not issue a plain statement indicating that Byrd's ineffective assistance of appellate counsel claims were procedurally barred. Rather, the Florida Supreme Court denied the ineffective assistance of appellate counsel claims on the merits, finding that appellate counsel was not deficient in failing to raise issues that were not preserved for appellate review and meritless. Consequently, Byrd's ineffective assistance of appellate counsel claims are entitled to a review on the merits.

**Claims XX and XXI**[12]

In Claim XX (Doc. 34 at pp. 121–26), Byrd contends that his due process rights were violated because the sentencing judge did not independently weigh aggravating and mitigating circumstances and reduce his findings to writing but, instead, allowed the State to prepare the written findings in support of the death sentence without the defense's knowledge. In Claim XXI (Doc. 34 at pp. 126–31), Byrd contends that

---

[12] These claims are erroneously identified in the amended petition as Claims XIX and XX. (*see* Doc. 34 at pp. 121–31)

Florida's death penalty statute is unconstitutional under of *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The respondent argues that these claims were not exhausted at the time Byrd filed his amended petition. (Doc. 35 at p. 39)  Byrd concedes that these claims were not exhausted at that time. (Doc. 39 at p. 22)

Although not exhausted when Byrd filed the amended petition in 2002, the claims were presented to, and pending before, the state post-conviction court at that time. (Doc. 35 at p. 39; Doc. 39 at p. 22)  Thus, these claims are likely exhausted.[13] *See Byrd v. State*, 14 So. 3d 921.

Accordingly, the respondent's request for dismissal of Claims XX and XXI is denied without prejudice to the respondent's asserting — in the response this order will permit — any procedural reason to dismiss these claims.

## CONCLUSION

The respondent's motion to dismiss (Doc. 35) is **GRANTED** to the extent that portions of Ground I (the substantive claim that Byrd was denied a fair trial because the prosecutor's false statements and improper vouching during summation), Ground VII (the substantive claim that the trial court failed to ensure that Byrd was present during critical stages of the proceedings), Ground VIII (the substantive claim that Byrd was denied his right to confront the witnesses against him), Ground IX (the

---

[13] In *Byrd v. State*, 14 So. 3d 921, the Florida Supreme Court addressed and affirmed the denial of Byrd's claim that the sentencing judge did not independently weigh aggravating and mitigating circumstances and reduce his findings to writing.  *Byrd*, 14 So.3d at 927.

substantive claim that Byrd was convicted on the basis of evidence obtained in violation of his right to remain silent), Ground XI (the substantive Fourth Amendment claim and ineffective assistance of counsel claim for failing to call Jody Clymer and the officers present during Byrd's arrest), Ground XIII (the challenge to the jury instructions on aggravating circumstances), Ground XIV (the claim that the sentencing court failed to consider Sullivan's disproportionate sentence as a non-statutory mitigating factor), Ground XV (the substantive claim that the jury instructions and the prosecutor's argument diminished the jury's sense of responsibility for sentencing), Ground XVI (the substantive claim that the penalty phase jury instructions shifted the burden to Byrd to prove that death was not appropriate), and all of Grounds V, X, XVII, and XVIII are **DISMISSED** for procedural reasons.

The respondent has **SIXTY (60) DAYS** to address the remaining grounds: Grounds I (in part), II, III, IV, VI, VII (in part), VIII (in part), IX (in part), XI (in part), XII, XIII (in part), XIV (in part), XV (in part), XVI (in part), XIX, XX, and XXI; Byrd has **FORTY-FIVE (45) DAYS** to respond; and the respondent has **THIRTY (30) DAYS** to reply.

ORDERED in Tampa, Florida, on February 27, 2015.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

SA:sfc